UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLIANCE TRANSPORTATION AND LOGISTICS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-3451-B |
| G & J TRUCK SALES, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant G & J Truck Sales, Inc. ("G&J")'s Motion to Dismiss (Doc.

33). The issue presented is whether Plaintiff is barred from bringing its action by Tex. Bus. Orgs.

Code Ann. § 9.051. For the reasons that follow, the Court **DENIES** G&J's motion.

## I.

## BACKGROUND[1]

This is a breach-of-contract case. Plaintiff Alliance Transportation and Logistics, LLC

("Alliance") is a Florida LLC in the business of transporting and delivering fracking sand and general

freight. Doc. 32, 3d Am. Compl., ¶¶ 5, 13. Alliance maintains "its principal office in Florida" but

does business in various other states, including Texas. *Id.* ¶ 5. Defendant G&J is a Texas corporation

in the business of selling commercial vehicles. *Id.* ¶¶ 2, 16.

---

[1] The Court derives the factual background from Alliance's Third Amended Complaint.

- 1 -

"On June 6, 2019, G&J and Alliance entered an agreement whereby G&J agreed to sell a . . . [2008 Freightliner truck] to Alliance . . . for $14,300." *Id.* ¶ 16. Two days later, Alliance picked up the truck from G&J and held it "at a local yard for transport." *Id.* ¶ 21. On August 8, 2019, while in transport from the local yard, the truck "broke down . . . 150 miles from pickup[.]" *Id.* ¶ 23.

After towing the vehicle to a dealer for testing, Alliance discovered "that the Engine Control Module was tampered with, the emissions data was deleted, and that the vehicle was mechanically modified." *Id.* ¶ 26. Alliance alleges that, after it informed G&J of the issues with the truck, "G&J agreed to refund the purchase price . . . and expenses incurred by Alliance, and [to] sell three other commercial vehicles to Alliance at a discounted price." *Id.* ¶ 29. Alliance contends that, in execution of this agreement, it purchased from G&J: (1) a 2010 Freightliner for $16,900; (2) a 2011 Freightliner for $18,800; and (3) a 2012 Freightliner for $17,950. *Id.* ¶ 30.

On December 10, 2019, Alliance wired G&J "approximately $36,000" for the trucks and received an $18,000 invoice credit "to cover the cost of the third vehicle." *Id.* ¶ 35. Drivers for Alliance then embarked to G&J's Groom, Texas facility to pick up the trucks. *Id.* ¶ 36. However, Alliance claims that, shortly after pickup, the 2011 and 2012 Freightliners began exhibiting mechanical problems.[2] *Id.* ¶¶ 39–40. Alliance avers that, after noticing issues with the 2011 Freightliner, it took diagnostics and discovered "that the electronics for the emissions system had been completely gutted and removed." *Id.* ¶ 39. Further, it contends that the 2012 Freightliner "began losing . . . and gushing oil about 5 miles from the G&J" pickup location. *Id.* ¶ 40. After inspection, Alliance brought the 2011 and 2012 Freightliners to G&J's location in Amarillo, Texas,

---

[2] Alliance also alleges that it identified problems with the 2010 Freightliner at pickup, but that it accepted the truck "after G&J applied a credit toward the cost of repair for that vehicle." Doc. 32, 3d Am. Compl., ¶ 38.

which "accepted the return of the vehicles." *Id.* ¶ 41. According to Alliance, G&J has not refunded the purchase price of the returned Freightliners or compensated it for expenses incurred in returning the vehicles. *Id.* ¶¶ 41–44.

After failing to resolve its dispute with G&J, Alliance filed the instant suit on November 19, 2020. Doc. 1, Original Compl. Since then, Alliance has amended its complaint three times. *See* Doc. 11, Am. Compl.; Doc. 20, 2d Am. Compl.; Doc. 32, 3d Am. Compl. Alliance's operative complaint (Doc. 32) alleges state law claims against G&J for breach-of-contract, common law fraud, and violation of the Texas Deceptive Trade Practices Consumer Protection Act. G&J has filed a timely motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for consideration. The Court considers it below.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss. In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the Court may "take judicial notice of matters of public record." *Norris v. Hearst*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that [their] claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alteration omitted).

"In the usual case, [a] court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Reneker v. Offill*, 2010 WL 1541350, at *7 (N.D. Tex. Apr. 19, 2010) (quoting *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002)). However, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Fed. R. Civ. P. 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (citing *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

## III.

## ANALYSIS

G&J contends that Alliance "is precluded from bringing the present action" because Alliance

- 4 -

"is not, and has never been, registered to do business in Texas."[3] Doc. 33, Def.'s Mot., 1. The Court disagrees.

A.    *Texas Business Organizations Code § 9.051*

Under Texas law, "[a] foreign filing entity . . . may not maintain an action, suit, or proceeding in a court of this state . . . on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with" the Texas Business Organizations Code Chapter 9.[4] Tex. Bus. Orgs. Code Ann. § 9.051. This door-closing provision extends to federal courts sitting in diversity jurisdiction. *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 881 (5th Cir. 2004) ("[A] foreign corporation conducting business in Texas without a certificate of authority from the Texas Secretary of State of State will be barred . . . from filing suit in either Texas state court or in a federal court sitting there in diversity, on any matter related to its intrastate business activity."). However, "transacting business in interstate commerce" does not constitute a "transaction of business in this state" for the purposes of § 9.051. Tex. Bus. Orgs. Code Ann. § 9.251(9); *see Arch Ins. Co. v. WM Masters & Assocs.*, 2013 WL 145201, at *4–5 (N.D. Tex. Jan. 14, 2013). Thus, courts have found that registration is not required "to maintain a suit in Texas unless the transaction at the core of the suit, the transaction from which the suit arises, is an intrastate transaction." *Terraco Indus. v. Am. Home Assurance Co.*, 2009 U.S. Dist. LEXIS 134064,

---

[3] The Court notes that G&J's motion is grounded in its argument that Alliance lacks capacity to sue under Texas law. *See generally* Doc. 33, Def.'s Mot. However, except as required to show the Court's jurisdiction, Alliance was not required to allege its capacity to sue. *See* Fed. R. Civ. P. 9(a)(1)(A). Instead, G&J's capacity argument amounts to an affirmative defense. *See Corp. Realty Assocs. v. Dun & Bradstreet Inc.*, 2016 WL 10968671, at *2 (W.D. Tex. Sept. 28, 2016). Therefore, for the purposes of this motion, the Court examines Alliance's operative complaint to determine whether G&J's lack-of-capacity defense is conclusively established. In doing so, the court accepts as true all of Alliance's factual allegations and views them in a light most favorable to it. *See In re Katrina*, 495 F.3d at 205.

[4] The specific procedures for registration are enumerated in Tex. Bus. Orgs. Code Ann. § 9.004.

at *7 (E.D. Tex. Mar. 2, 2009); *Anglo-Dutch Petroleum Int'l, Inc. v. Caser Funding Network, LP*, 441 S.W.3d 612, 625 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("We examine the transaction at the core of the suit, *i.e.*, the transaction from which the suit arises.").

In the present case, for G&J's 12(b)(6) motion to succeed, Alliance's complaint must allege facts that conclusively establish that (1) Alliance is a foreign filing entity that is not registered to do business in Texas, and (2) Alliance's claims against G&J arise from its intrastate transaction of business in Texas. Because Alliance's complaint does not conclusively establish that Alliance's claims arise from intrastate transactions, the Court declines to consider whether Alliance is registered to do business in Texas.[5]

B.    *Alliance's Complaint Does Not Conclusively Characterize Its Transactions as Intrastate*

G&J argues that the transactions sued upon, i.e, its sales of trucks to Alliance, were in intrastate commerce because Alliance "purchas[ed] commercial trucks in Texas from a Texas entity." Doc. 33, Def.'s Mot., 3. In response, Alliance argues that the transactions were, in fact, in interstate commerce because (1) Alliance conducts its business from Florida, (2) none of Alliance's trucks operate exclusively in one state, (3) Alliance intended to use each of the trucks it purchased from G&J in interstate commerce, and (4) the purchase of the trucks involved interstate transfers of money. Doc. 34, Pl.'s Resp., ¶ 14. The court agrees with Alliance.

Though the Texas legislature has not yet done so, courts have defined "[a]n 'intrastate transaction' [as] a commercial transaction that occurs entirely within one state, . . . [and] an 'interstate transaction' [as] a commercial transaction that occurs between any point in a state and

---

[5] Accordingly, because it is not relevant to the disposition of the instant motion, the Court declines G&J's request to take judicial notice of the Secretary of State record attached to its motion.

any point outside of the state." *Terraco Indus.*, 2009 U.S. Dist. LEXIS 134064, at *7; *see Anglo-Dutch Petroleum Int'l, Inc.*, 441 S.W.3d at 625. Whether a transaction is in intrastate or interstate commerce depends upon "the facts of the individual case." *Baxter v. Aguilar*, 2007 U.S. Dist. LEXIS 72053, at *30–31 (W.D. Tex. June 28, 2007) (quoting *Kutka v. Temps., Inc.*, 568 F. Supp. 1527, 1532 (S.D. Tex. 1983)). In making its determination, the Court inquires only into the transactions sued upon. *See Hochmetal Africa (PTY), Ltd. v. Metals, Inc.*, 566 S.W.2d 715, 718 (Tex. App.—Corpus Christi–Edinburg 1978, no writ) ("Just because a foreign corporation is, for example, transacting business without a permit does not affirmatively show that those transactions sued upon are not interstate.").

Here, Alliance's allegations, taken as true and viewed in a light most favorable to it, establish that its purchases from G&J could be interstate transactions. To start, Alliance does not maintain any offices in Texas. *See* Doc. 32, 3d Am. Compl., ¶ 11. Though the complaint does not expressly state where Alliance negotiated and executed its agreements with G&J or where it wired payment from, this creates a plausible inference that these actions occurred out-of-state. Texas courts have emphasized similar facts in characterizing transactions as interstate. *See Anglo–Dutch Petroleum Int'l, Inc.*, 441 S.W.3d at 625 (concluding that contracts were in interstate commerce when an out-of-state party negotiated and signed the agreements in, wired payment from, and communicated exclusively from out of state); *Killian v. Trans Union Leasing Corp.*, 657 S.W.2d 189, 191 (Tex. App.—San Antonio 1983, pet. ref'd n.r.e.) (finding that a lease agreement was in interstate commerce when entered with an Illinois leasing company and payments were made in Illinois).

The Court also notes that, in the case of the original 2008 Freightliner, Alliance alleges that the truck was held locally before being picked up "*for transport* to Alliance." Doc. 32, 3d Am. Compl.,

¶¶ 21–22. Presumably, transporting a truck located in Texas to a Florida entity with no Texas offices would involve crossing state lines. The Court is unconvinced that Alliance's act of crossing state lines to pick up the truck locally, as opposed to having it delivered across state lines, conclusively characterizes the transaction as intrastate. *See generally Collins v. Hardeman-King Co.*, 74 S.W.2d 181, 181–82 (Tex. App.—Amarillo 1934, no writ) (suggesting that the use of local agents to facilitate interstate transactions does not remove their interstate character); *Altheimer & Baer, Inc. v. Veral Bourland Home Appliances*, 369 S.W.2d 478, 481–82 (Tex. App.—Fort Worth 1963, writ ref'd n.r.e.) (same).

Although G&J makes much of the fact that the trucks never "left the state of Texas," *see* Doc. 33, Def.'s Mot., 4, courts have found that the location of the subject matter of a transaction is not dispositive. *See Anglo-Dutch Petroleum Int'l Inc.*, 441 SW3d at 625 ("[E]ven when the subject matter of a contract is in Texas, courts look to the transaction itself and whether the transaction occurred 'entirely within one state.'"); *Prospect Energy Corp. v. Dall. Gas Partners, LP*, 2012 WL 2357266, at *4 (S.D. Tex. June 20, 2012) (finding that an agreement to sell "membership interests in a Texas LLC" to a Maryland corporation with its principal place of business in New York was an interstate transaction under Tex. Bus. Orgs. Code § 9.251(9)). This is particularly true here, given that Alliance contends that the reason for the trucks' continued presence in Texas was their alleged failure to operate as warranted. *See* Doc. 34, Pl.'s Resp., ¶ 17. Put simply, G&J has not identified any alleged facts that conclusively establish that the transactions sued upon were intrastate as necessary to defeat Alliance's claims at this stage.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds that G&J's lack-of-capacity defense is not conclusively established by the facts alleged in Alliance's Third Amended Complaint. Accordingly, the Court **DENIES** G&J's Motion to Dismiss.


SO ORDERED.

SIGNED: September 28, 2021.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE