UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLIANCE TRANSPORTATION AND LOGISTICS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-3451-B |
| G&J TRUCK SALES, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant G&J Truck Sales, Inc. ("G&J")'s First Amended Motion for Change of Venue (Doc. 38). G&J requests that this action be transferred from this Division to the Amarillo Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a), or in the alternative, pursuant to 28 U.S.C. § 1404(a). Doc. 38, Def.'s Am. Mot., ¶ 19. For the reasons set forth below, the Court **GRANTS** G&J's Motion pursuant to § 1404(a).

### I.

### BACKGROUND[1]

This is a breach-of-contract case. Plaintiff Alliance Transportation and Logistics, LLC ("Alliance") is a Florida LLC in the business of transporting and delivering fracking sand and general freight. Doc. 32, 3d Am. Compl., ¶¶ 5, 13. Alliance maintains "its principal office in Florida" but

---

[1] Because it is relevant to the Court's disposition of the instant motion, the Court takes judicial notice of the following: (1) Amarillo, Groom, and Childress, Texas, are located in the Amarillo Division of the Northern District of Texas; and (2) Wichita Falls and Quanah, Texas, are located in the Wichita Falls Division of the Northern District of Texas. *See generally Northern District of Texas*, https://www.txnd.uscourts.gov/court-locator (last visited Dec. 9, 2021).

does business in various other states, including Texas. *Id.* ¶ 5. Defendant G&J is a Texas corporation in the business of selling commercial vehicles. *Id.* ¶¶ 2, 16, 20.

In 2019, Alliance agreed to purchase a 2008 Freightliner truck from G&J. *Id.* ¶ 16. Two days later, Alliance picked up the truck from G&J and held it "at a local yard for transport." *Id.* ¶ 21. However, while in transport from the local yard, the truck "broke down approximately 150 miles from pickup in Childress, Texas." *Id.* ¶ 23. The truck was initially "towed to Quan[]ah, Texas," for diagnostics and later towed to Wichita Falls, Texas, for repairs. *Id.* ¶¶ 24–25.

After it informed G&J of the problems with the first truck, Alliance alleges that "G&J agreed to refund the purchase price . . . and expenses incurred by Alliance, and [to] sell three other commercial vehicles to Alliance at a discounted price." *Id.* ¶ 29. In execution of this agreement, Alliance purchased three more Freightliner trucks from G&J (2010, 2011, and 2012 models), and received an invoice credit. *Id.* ¶¶ 30, 35. Alliance then sent drivers to G&J's Groom, Texas, facility to pick up the trucks. *Id.* ¶ 36.

According to Alliance, after pickup, all three trucks "were only able to travel approximately 5 miles before . . . exhibiting major problems." *Id.* ¶ 37. The 2010 Freightliner "had some problems when it was picked up," but G&J accepted the truck "after G&J applied a credit towards the cost of repair for that vehicle." *Id.* ¶ 38. The 2011 Freightliner's "dashboard began flickering and flashing[] and was taken to Premier Freightliner for diagnostics." *Id.* ¶ 39. The 2012 Freightliner "began losing . . . and gushing oil" mid-transport. *Id.* ¶ 40. Ultimately, "both the 2011 and 2012 Freightliner vehicles were taken to the G&J location . . . in Amarillo, Texas, . . . [which] accepted the return of the vehicles." *Id.* ¶ 41. Alliance alleges that G&J has not refunded the purchase price of the returned Freightliners or compensated it for expenses incurred in returning the vehicles. *Id.* ¶¶ 41–44.

After failing to resolve its dispute with G&J, Alliance filed the instant suit on November 19, 2020. *See* Doc. 1, Original Compl. G&J now moves to transfer this case to the Amarillo Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a), or in the alternative, 28 U.S.C. § 1404(a). *See* Doc. 38, Def.'s Am. Mot. The motion is fully briefed and ripe for consideration. The Court considers it below.

## II.

## LEGAL STANDARD

Even where venue is proper, a district court may, "[f]or the convenience of the parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). A decision to transfer venue pursuant to § 1404(a) is made with reference to a number of judicially-developed private- and public-interest factors, which "apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law [governing] the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

In conducting this multi-factor analysis, no single interest factor is dispositive. *Id.* Moreover, the factors must be weighed in a manner that "reflect[s] the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* The amount of deference awarded to a plaintiff's choice of venue varies based upon whether the plaintiff has filed suit inside or outside their home forum. *Davis v. City of Fort Worth*, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014). The movant bears the burden of proving that transfer is proper under 28 U.S.C. § 1404(a). *In re Volkswagen*, 545 F.3d at 314 n.10.

### III.

### ANALYSIS

Applying the multi-factor test set forth above, the Court finds that this case should be transferred pursuant to § 1404(a).[2] *Id.* at ¶¶ 3–5. To obtain transfer pursuant to § 1404(a), G&J was required to show that (1) this suit could have properly been filed in the Amarillo Division, and (2) the Amarillo Division is "clearly more convenient" when considered in light of the private- and public-interest factors. *See In re Radmax*, 720 F.3d at 287–88 (quoting *In re Volkswagen*, 545 F.3d at 315). Alliance does not dispute that suit could have been properly filed in the Amarillo Division. Doc. 42, Pl.'s Resp., ¶ 2. *See generally* 28 U.S.C. § 1391(b). Accordingly, the Court moves to the multi-factor analysis to determine if G&J has shown good cause for transfer.

A.   *Private-Interest Factors*

   1.   Relative Ease of Access to Sources of Proof

G&J avers that "the primary sources of proof in this case will likely be the testimony of witnesses to the transaction and/or the trucks." Doc. 38, Def.'s Am. Mot., ¶ 10. "The trucks that are

---

[2] Because the Court finds that transfer is proper pursuant to § 1404(a), it does not consider the parties' § 1406(a) arguments.

the subject of this lawsuit," G&J claims, "are located in Amarillo, Texas." *Id.* In response, Alliance contends that "the most critical evidence supporting [its] claims is documentary . . . and the testimony will not involve a tremendous amount of in-person interviews or depositions." Doc. 42, Pl.'s Resp., ¶ 11. Further, Alliance reasons that "the physical location of the trucks . . . is immaterial, because any inconvenience or additional expense in performing a physical inspection in Amarillo would be borne exclusively by Plaintiff." *Id.* ¶ 20.

The Court finds this factor weighs in favor of transfer. Of the four trucks Alliance purchased from G&J, only one—the original 2008 Freightliner—is alleged to have ever left the Amarillo Division. *See* Doc. 32, Pl.'s Compl., ¶¶ 21–29, 36–41. Thus, three of the four trucks at issue were picked up in, exhibited problems in, and diagnosed, repaired, or returned in the Amarillo Division. *See id.* And even though the 2008 Freightliner exited the Amarillo Division, it is not alleged to have been inspected, diagnosed, or even driven in the Dallas Division. *See id.* ¶¶ 16–28. Moreover, even accepting that much of the evidence produced in this case will be documentary, that evidence appears to exist predominantly in the Amarillo Division—not the Dallas Division. And while any inconvenience stemming from transporting evidence to Dallas "may well be slight . . . the question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d at 288. Therefore, since a substantial portion of the documentary and physical evidence at issue in this case is located in the Amarillo Division and almost none (if any) of it is located in the Dallas Division, the Court concludes this factor weighs in favor of transfer.

  2. <u>Availability of Compulsory Process to Secure the Presence of Witnesses</u>

Next, G&J argues that transfer is supported by the Court's lack of legal vehicles to compel attendance of unwilling witnesses. Doc. 38, Def.'s Am. Mot., ¶ 11. "In [weighing] this factor, the

Court considers the availability of compulsory process to secure the attendance of witnesses, particularly nonparty witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019). As the party seeking transfer, G&J "has the burden to establish that the [Amarillo Division] has subpoena power over more unwilling witnesses than" the Court. *See R2 Sols. LLC v. Target Corp.*, 2021 WL 2550908, at *3 (E.D. Tex. June 22, 2021).

In reviewing the parties' briefing, the Court notes that neither G&J nor Alliance have actually identified any unwilling witnesses. *See* Doc. 38, Def.'s Am. Mot.; Doc. 42, Pl.'s Resp. When this is the case, courts generally find that the compulsory process factor should be given little weight. *See, e.g., Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020) ("When no party has alleged or shown any witness's unwillingness [to testify], a court should not attach much weight to the compulsory process factor."); *EEOC v. Faurecia Auto. Seating, LLC*, 2017 WL 4158624, at *4 (N.D. Miss. Sept. 19, 2017) (finding the compulsory process factor neutral when the movant "failed to show that any of the prospective witnesses would be unwilling to testify absent a subpoena"); *see also Wells Fargo Foothill, Inc. v. Schmidt, Westergard & Co.*, 2009 WL 10705026, at *1 (N.D. Tex. Nov. 4, 2009).

Here, G&J summarily argues that "compulsory process to secure the presence of any unwilling witnesses located in the Amarillo area will not be available to the Dallas Division." Doc. 38, Def.'s Am. Mot., ¶ 11. But even accepting this as true, G&J's reasoning still relies on the Court to assume that (1) the parties intend to call these unidentified, Amarillo-based witnesses; (2) the witnesses will be unwilling to cooperate in the absence of a subpoena; (3) the witnesses will not be subject to the Court's subpoena power; (4) the witnesses will be subject to the Amarillo Division's subpoena power;

and (5) the amount and character of compelled testimony gained by transferring this case to the Amarillo Division outweighs the loss of any testimony that could be compelled by this Court, but not the Amarillo Division. The Court is unwilling to make such assumptions and finds that this factor is neutral.

### 3. Cost of Attendance for Willing Witnesses

Next, G&J argues that transferring this case to Amarillo will impose a lesser cost on and be more convenient for willing witnesses. Doc. 38, Pl.'s Am. Mot., ¶ 12. "The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). This is especially true when, as here, "the distance between [the] existing venue for trial . . . and [the] proposed venue under § 1404(a) is more than 100 miles." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) (noting that in such cases, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled"). Nevertheless, "[t]o transfer venue for the purposes of convenience . . . , the moving party must make more than a general allegation that certain key witnesses are necessary; the movant must specifically identify key witnesses and outline the substance of their testimony." *Aland v. Faison Assocs.*, 1998 WL 355468, at *4 (N.D. Tex. June 22, 1998); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010); *N2 Consulting, LLC v. Engineered Fastener Co.*, 2002 WL 31246770, at *3 (N.D. Tex. Oct. 2, 2002) (quoting *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993)). This inquiry accounts for both party and nonparty witnesses, but "the convenience of the nonparty witnesses . . . is accorded the greatest weight." *Metromedia Steakhouses*, 2008 WL 794533, at *3 (quoting *Sargent v. Sun Tr., N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20,

2004)).

As for party witnesses, G&J asserts that its owner and operator, Clay Britten, lives in Bushland, Texas, and that this supports transfer. *See* Doc. 38, Def.'s Am. Mot., ¶ 10. However, any inconvenience to Mr. Britten is mitigated by Alliance's specific showing that its corporate representatives from Florida will incur greater costs and inconvenience flying to Amarillo than they would flying to Dallas. *See* Doc. 42, Pl.'s Resp., ¶ 23 & Ex. A, ¶¶ 7–10. As such, the Court does not believe that the inconvenience to party witnesses tips the scales either way for this factor.

As for nonparty witnesses, G&J fails to identify any. *See* Doc. 38, Def.'s Am. Mot. Instead, it simply contends that "willing witnesses in the Groom area will be forced to travel 334 miles for a trial in the Dallas Division." Doc. 38, Def.'s Am. Mot., ¶¶ 12–13. This contention, without more, is clearly insufficient to satisfy G&J's burden to "identify key witnesses and outline the substance of their testimony." *Aland*, 1998 WL 355468, at *4; *see Magana.*, 2010 WL 5108850, at *2.

By contrast, Alliance has identified four nonparty witnesses who are located in Dallas, Texas; Wichita Falls, Texas; Amarillo, Texas; and Lithonia, Georgia. Doc. 42, Pl.'s Resp., ¶ 7. Alliance argues that as compared to Amarillo, "Dallas is more convenient, and less costly" for the witnesses located in Dallas, Wichita Falls, and Lithonia because Dallas is closer to these cities.[3] Doc. 42, Pl.'s Resp., ¶ 16. Alliance hints that the witnesses based in Dallas and Wichita Falls are "perhaps the two most critical witnesses" but it does not outline the testimony of those (or any other) witnesses. *See id.* Without such a showing, the Court is unable to determine whether the purportedly inconvenienced witnesses' testimony is truly central to the case.[4] *See Sivertson v. Clinton*, 2011 WL

---

[3] Presumably, the opposite would be true for Alliance's Amarillo-based witness.

[4] This determination is especially relevant in this case. To reiterate, only one of the four trucks referenced in Alliance's Complaint is alleged to have ever left the Amarillo Division. *See* Doc. 32, Pl.'s

4100958, at *6 (N.D. Tex. Sept. 14, 2011). Accordingly, the Court finds that this factor is neutral.

### 4. Practical Concerns that Make Trial of a Case Easy, Expeditious, and Inexpensive

The fourth private-interest factor is a catch-all designed to examine practical issues that make trial of a case easy, expeditious, and inexpensive. G&J's argument that the fourth private-interest factor supports transfer largely mirrors its argument as to the third factor. *See* Doc. 38, Def.'s Am. Mot., ¶¶ 12–14. G&J contends that because "non-party witnesses are most likely located within the Amarillo Division," it will be easier to schedule fact witnesses if the case is tried in the Amarillo Division. *Id.* But because G&J has failed to identify any nonparty witnesses, the Court cannot find this factor favors transfer. And because Alliance has not argued that this factor weighs against transfer, *see* Doc. 42, Pl.'s Resp., the Court finds it is neutral.

### B. Public-Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

"The Supreme Court has determined that 'jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *In re Volkswagen AG*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). For this reason, the "local interest" public-interest factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *CUPP Cybersecurity LLC v. Symantec Corp.*, 2019 WL 1070869, at *9 (N.D. Tex. Jan. 16, 2019). G&J argues that "the people of the Amarillo Division . . . have an interest in the present case [because] it involves a commercial motor vehicle transaction which occurred in their [Division.]" Doc. 38, Def.'s Am. Mot., ¶ 16. Alliance does not respond to G&J's local interest

---

Compl., ¶¶ 16–41. Thus, the Court is hesitant to accept G&J's assertion that "the most critical witnesses" are located in Dallas and Wichita Falls without some explanation as to how those witnesses are connected to the case.

argument, *see* Doc. 42, Pl.'s Resp., and the Court agrees that this factor weighs solidly in favor of transfer to the Amarillo Division. *See La Day v. City of Lumberton*, 2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012) ("Transfer is appropriate where none of the operative facts occurred in the [transferor] division and where the division ha[s] no particular local interest in the outcome of the case.").

2. Remaining Public-Interest Factors

The remaining public-interest factors are (1) "the administrative difficulties flowing from court congestion;" (2) "the familiarity of the forum with the law . . . [governing] the case;" and (3) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d at 315. G&J posits that these factors weigh neutrally, and Alliance does not address them at all. *See* Doc. 38, Def.'s Am. Mot., ¶ 17; Doc. 42, Pl.'s Resp. The Court agrees with G&J and finds that these factors are neutral.

C.   *Deference to Alliance's Choice of Forum*

Having analyzed the factors, the court now determines the appropriate amount of weight to be given to Alliance's choice of forum. "A plaintiff's choice is normally entitled to deference, but when [they] file outside [their] home forum, the weight accorded to the choice is diminished." *Davis*, 2014 WL 2915881, at *2 (quoting *Sivertson*, 2011 WL 4100958, at *4). Here, Alliance is not a resident of the Dallas Division and, as discussed, the facts giving rise to this case did not occur in the Dallas Division. Accordingly, the Court gives less deference to Alliance's initial choice of forum.

D.   *The Balancing Factors Support Transfer*

To summarize, the Court finds two factors weigh in favor of transfer and six are neutral. The bulk of the evidence in this case appears to be in or near the Amarillo Division, and the Dallas

Division has no factual or otherwise relevant connection to this case. Given that Alliance's choice of forum is entitled to only diminished deference, the Court concludes that G&J has met its burden to show that the Amarillo Division "is clearly more convenient." *See In re Radmax*, 720 F.3d at 288. As such, the Court finds that G&J's Motion should be **GRANTED** pursuant to § 1404(a).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** G&J's First Amended Motion for Change of Venue (Doc. 38) to the extent that it seeks transfer pursuant to 28 U.S.C. § 1404(a). This case is hereby **TRANSFERRED** to the Amarillo Division of the Northern District of Texas. The Clerk of Court shall effectuate the transfer according to the usual procedure.

SO ORDERED.

SIGNED: December 13, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE